IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00391-SBP

JASON CHARLES MARCHAND,

    Plaintiff,

v.

NURSE HOPE,

    Defendant.

---

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

**Susan Prose, United States Magistrate Judge**

This matter is before the court on Defendant Hope Bonner's motion for summary judgment. ECF No. 53 ("Motion" or "Motion for Summary Judgment"). Pro se Plaintiff Jason Charles Marchand did not respond to the Motion. The undersigned presides with the parties' unanimous consent pursuant to 28 U.S.C. § 636(c)(1). ECF Nos. 13, 22; ECF No. 24 (order of reference). Having carefully reviewed the Motion, Mr. Marchand's relevant submissions on the court docket, and the applicable law, the court finds that oral argument would not materially assist in the disposition of the Motion. For the reasons that follow, the court respectfully **GRANTS** the Motion.

**BACKGROUND**

**I.**    **Undisputed Facts**

As an initial matter, Mr. Marchand's failure to respond to the Motion allows the court to accepts as true all material facts asserted and properly supported in the Motion. Fed. R. Civ. P.

56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court *may* . . . consider the fact undisputed for purposes of the motion[.]") (emphasis added); *Beard v. Banks*, 548 U.S. 521, 527 (2006) ("[B]y failing specifically to challenge the facts identified in the defendant's statement of undisputed facts, [the plaintiff] is deemed to have admitted the validity of the facts[.]").[1] However, in deference to Mr. Marchand's pro se status, and to ensure a complete record, the court has evaluated whether the factual assertions in the operative pleading—which Mr. Marchand has verified pursuant to 28 U.S.C. § 1746, *see* Amended Complaint, ECF No. 8 at 8—demonstrate any genuine dispute of material fact that requires a trial.

Therefore, for purposes of the Motion, the court draws from the record the following material facts, which it construes in Mr. Marchand's favor, and which are undisputed unless otherwise noted:

At all times relevant to the Amended Complaint, Mr. Marchand was a pretrial detainee at the Larimer County Jail, where Ms. Bonner worked as a medical assistant. Motion 2, Statement of Undisputed Facts ¶ 1. Although Mr. Marchand refers to Medical Assistant Bonner as a "nurse," *see* Am. Compl. ¶ 1, it is undisputed that she is an unlicensed medical assistant.[2] *See*

---

[1] The docket shows that Mr. Marchand received a copy of the Motion for Summary Judgment. *See* ECF No. 56-1 (receipt of mailing filed by Ms. Bonner). The court further notes that, on November 25, 2024, the court's mail to Mr. Marchand at the Lincoln Correctional Center in Lincoln, Nebraska (his current address of record in this case) was returned with a forwarding address in Indiana. ECF No. 63. While Mr. Marchand is required to apprise the court of his current address, *see* D.C.COLO.LCivR. 5.1(c), the court's mail to Mr. Marchand's forwarding address in Indiana was not returned. ECF No. 64. It thus appears that the court has Mr. Marchand's current address, at least as of late November 2024.

[2] Ms. Greengard notes that Ms. Bonner is a "CMA." Certified medical assistants are not licensed

Affidavit of Renee Greengard, ECF No. 53-2 ¶ 2.[3]

On November 16, 2022, Medical Assistant Bonner administered a tuberculin skin test ("TB skin test") to Mr. Marchand. *Id.* ¶ 6; Am. Compl. at 4. In Medical Assistant Bonner's notes of her encounter with Mr. Marchand on that date, she recorded that, prior to administering the TB skin test, she conducted a "TB Risk Assessment and Screening." Statement of Undisputed Facts ¶ 2 (citing ECF No. 53-1 at 1). Medical Assistant Bonner wrote that Mr. Marchand reported no prior history of tuberculous infection, although he did report that he had had a positive TB skin test at some point in the past. *See id.* ¶¶ 2, 6, 11 (citing ECF No. 53-1 at 1-5). Medical Assistant Bonner also recorded that, by Mr. Marchand's self-report, he previously had an "abnormal" chest x-ray that resulted in some type of unidentified treatment for a period of six months. ECF No. 53-1 at 1-2.

Mr. Marchand states in the Amended Complaint that he told Medical Assistant Bonner he could not receive a TB skin test, that he had a history of "prior allergic reactions to the injection," that he is "prone to staph infections," and that he needed to be given a chest x-ray in lieu of a tuberculin skin test. Am. Compl. at 4. According to Mr. Marchand, Medical Assistant Bonner told him "it was policy and standard protocol and injected me with the Tuberculin

---

in Colorado. *See* DORA Document Management Services - Division of Professions and Occupations Public Documents ("license types" do not identify certified medical assistants), last accessed on March 24, 2025. The court may take judicial notice of the contents of a government agency's website. *See, e.g.*, *N.M. ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 702 n.22 (10th Cir. 2009) (taking judicial notice of information on "[t]he websites of two federal agencies"); *Tatten v. City & Cnty. of Denver*, 730 F. App'x 620, 624 n.2 (10th Cir. 2018) (taking judicial notice of information on state bar's website, citing *N.M. ex rel. Richardson*).

[3] Ms. Greengard, an expert retained by Medical Assistant Bonner, is an advanced practice registered nurse and a board-certified Family Nurse Practitioner. Greengard Affidavit ¶ 3.

anyway." *Id*.[4] Mr. Marchand presented no evidence showing that he refused the test, and Medical Assistant Bonner did not record in his medical record that the test was refused.

Later in the morning of November 16, 2022, after Mr. Marchand had received the TB skin test, he was seen by Traci Alvarado, an Advanced Registered Nurse Practioner, for a "health assessment." Statement of Undisputed Facts ¶ 3. Ms. Alvarado recorded that, at that time, Mr. Marchand reported no known medication allergies. *Id.* ¶¶ 3-5. However, at some point on or before November 26, 2022, "tuberculin" was listed as an allergy in Mr. Marchand's medical records. ECF No. 53-1 at 5.

On December 1, 2022, approximately two weeks after the administration of the TB skin test, Mr. Marchand was taken to the emergency department at Poudre Valley Hospital in Fort Collins, Colorado, for evaluation of a skin ulcer and arm pain. ECF No. 53-1 at 6. The physician who evaluated Mr. Marchand recorded that Mr. Marchand had 'TB test placed about 3 weeks ago as he entered jail. States that he always has a positive skin test and he is supposed to have a chest x-ray. The person placed in the test stated that it was policy and [placed it] anyway." *Id.* The physician recorded that Mr. Marchand's skin at the administration site had "blistered and then broke open," prompting prison medical personnel to place him "on topical antibiotics as well as 2 antibiotics for skin infection." *Id.* Mr. Marchand was brought to the emergency department because he was experiencing "a small ulcer in the area" of the injection site and was "beginning to have pain of his left forearm and [unidentified Jail officials] were concerned of the possibility of abscess formation." *Id.*

---

[4] The Motion does not address these statements by Mr. Marchand.

The emergency department physician included in his differential diagnosis for Mr. Marchand the possibility of "DVT," or deep vein thrombosis,[5] and ordered an ultrasound. *Id.* ("There is concern of the possibility of evolving upper extremity DVT so I sent for ultrasound."). The ultrasound was negative, and the physician observed that the ulcer did "not look particularly concerning and will likely granulate on its own without any further intervention." *Id.* The physician noted that Mr. Marchand was "already on antibiotics" and therefore the physician did "not change his plan of care." *Id.*

## II.     Mr. Marchand's Claim Against Medical Assistant Bonner

Mr. Marchand brings suit against Medical Assistant Bonner pursuant to 42 U.S.C. § 1983 raising one claim for deliberate indifference to a serious medical need in violation of the Fourteenth Amendment. Am. Compl. at 4-7. He sues Medical Assistant Bonner in her individual capacity only and seeks damages in the amount of $50,000. *Id.* at 2, 8.

### SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013) (citation omitted). But "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement

---

[5] The court takes judicial notice of the meaning of this common medical acronym, which "is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Deep vein thrombosis (DVT) - Symptoms & causes - Mayo Clinic, last visited March 23, 2025; *see also* Fed. R. Evid. 201(b)(2).

is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original)). Put another way, "to survive a motion for summary judgment, the nonmoving party must show more than 'the mere existence of a scintilla of evidence in support of the [nonmoving party's] position; there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *N.M. Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 994 F.3d 1166, 1171-72 (10th Cir. 2021) (cleaned up) (quoting *Anderson*, 477 U.S. at 252). A fact is "material" if it pertains to an element of a claim or defense. *Anderson*, 477 U.S. at 248. Whether there is a "genuine issue" as to a material fact depends on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *SEC v. GenAudio Inc.*, 32 F.4th 902, 920 (10th Cir. 2022) (same).

"[O]nce the movant has made a showing that there is no genuine dispute of material fact, the non-moving party must 'make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *SEC v. Thompson*, 732 F.3d 1151, 1157 (10th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "For dispositive issues on which the [nonmovant] will bear the burden of proof at trial, [the nonmovant] must 'go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment.'" *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007) (cleaned up) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)); *see also May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) ("Once the moving party has identified a lack

of a genuine issue of material fact, the nonmoving party has the burden to cite to specific facts showing that there is a genuine issue for trial.") (quotation omitted).

The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1084 (10th Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). "To defeat a motion for summary judgment, [the nonmovant's] evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Id.* (quoting *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992)); *accord Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003) ("Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment.") (quotation omitted). And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

In applying the above principles, the court is mindful that Mr. Marchand proceeds pro se and thus affords his filing a liberal construction. *Smith v. Allbaugh*, 921 F.3d 1261, 1269 (10th Cir. 2019). But the court cannot and does not act as an advocate, *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019), and applies the same procedural rules and substantive law to a pro se party as to a represented party. *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018); *Dodson v. Bd. of Cnty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

## ANALYSIS

Construing the undisputed facts in the light most favorable to Mr. Marchand and drawing every reasonable inference in his favor, no reasonable jury could find that Medical Assistant Bonner was deliberately indifferent to a serious medical need in violation of Mr. Marchand's Fourteenth Amendment rights.

To begin with the operative legal framework, "a prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1136 (10th Cir. 2023) (quoting *Sealock*, 218 F.3d at 1209). "The deliberate indifference standard applies to pretrial detainees, such as [Mr. Marchand], through the Fourteenth Amendment." *Id*. (citing *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1153-54 (10th Cir. 2022)). "The contours of constitutional liability under the deliberate-indifference standard are familiar: there is both an objective and a subjective component." *Paugh*, 47 F.4th at 1154 (quoting *Estate of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1262 (10th Cir. 2022)). "The objective component focuses on the 'seriousness of the plaintiff's alleged harm,' and the subjective component focuses on 'the mental state of the defendant with respect to the risk of that harm.'" *Id.* at 1154-55 (quoting *Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1044 (10th Cir. 2022)).

To satisfy the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self*, 439 F.3d at 1230 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "Generally, a medical need qualifies as 'sufficiently serious' if it 'has been diagnosed by a physician as mandating treatment' or if it is 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Paugh*, 47 F.4th at 1155 (quoting *Sealock*, 218 F.3d at 1209).

The subjective component "requires the plaintiff to present evidence of the prison official's culpable state of mind." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2001). "That is, a plaintiff must present a triable issue of fact that a defendant 'knows of and disregards an excessive risk to inmate health or safety.'" *Paugh*, 47 F.4th at 1156 (quoting *Strain v. Regalado*, 977 F.3d 984, 990 (10th Cir. 2020)). For this, the plaintiff must establish that a defendant was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence is insufficient to establish the subjective element. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also, e.g.*, *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006) ("Mere negligence does not constitute deliberate indifference; deliberate indifference is equivalent to recklessness in this context.").

Considering the undisputed factual record first under the objective component of the deliberate indifference test, Mr. Marchand asserts that his allergic reaction to a TB skin test demonstrates the existence of a sufficiently serious medical need. *See* Am. Compl. at 5. Medical Assistant Bonner claims that Mr. Marchand has presented no evidence to support this contention. She points to the statement of the emergency department physician noting that, two weeks after the injection, Mr. Marchand had only "some discomfort" and that his skin ulcer did "not look particularly concerning[.]" Motion at 8.

However, viewing the facts in the light most favorable to Mr. Marchand, his reaction to the TB skin test was of sufficient concern to prompt medical personnel at the Jail to prescribe him both topical antibiotics and two additional (apparently oral) "antibiotics for skin infection." ECF No. 53-1 at 6. Even then, according to the emergency department physician's report, prison

medical personnel still had sufficient "concern[] of the possibility of abscess formation" to have Mr. Marchand transported from the facility to an outside hospital for an emergency evaluation. *Id.* And, in light of Mr. Marchand's reports of pain, the emergency department physician included in his differential diagnoses for Mr. Marchand the possibility that he could be suffering from deep vein thrombosis. *Id.*

To be sure, courts have concluded that mild effects attendant on tuberculin skin tests—like nausea and vomiting—do not demonstrate the requisite objective seriousness. *See, e.g.*, *Davis v. Huddleston*, No. 21-cv-03205-RMR-STV, 2022 WL 22850139, at *3 (D. Colo. Aug. 19, 2022) (collecting cases and noting that "courts around the country have rejected nearly identical claims [to the plaintiff's], finding . . . the skin test does not pose a substantial risk of serious harm, even where an inmate alleges to experience nausea or vomiting as a side effect of the test"), *motion for relief from judgment denied*, 2022 WL 22850137 (D. Colo. Sept. 29, 2022). But the undisputed facts here show a markedly higher level of harm than a bout or two of vomiting or some temporary nausea. Here, there is no dispute that the TB skin test Medical Assistant Bonner administered resulted in Mr. Marchand being prescribed at least three different types of antibiotics; triggered sufficient concern that prison medical providers requested his transport to an outside hospital emergency department; and prompted an emergency department physician to consider, and rule out by ultrasound testing, the possibility that Mr. Marchand's arm pain was caused by deep vein thrombosis.

Medical Assistant Bonner does not dispute these facts, but instead points to the testimony of her retained expert, who avers that reactions to tuberculosis skin tests "are typically localized, superficial, and mild, with symptoms including itching, redness, and the occasional blister," and

10

that "[it] is unlikely that the tuberculosis skin test caused nerve or muscle damage, or a skin infection, in Plaintiff." Greengard Affidavit ¶¶ 20, 23. The issue with Ms. Greengard's testimony for purposes of the objective component is that the undisputed facts, at the summary judgment stage, contradict it. Contrary to Ms. Greengard's averrals, the facts show that Mr. Marchand did *not* have a "typical . . . superficial" or "mild" reaction to the TB skin test, but rather that he contracted an infection that required multiple forms of antibiotic treatment and, eventually, a hospital physician's assessment.[6] At a minimum, this record reveals a genuine dispute of material fact concerning the objective component of the deliberate indifference test.

Regardless, even if there were no genuine dispute on the objective prong, Mr. Marchand has failed to establish the existence of any genuine dispute that necessitates a trial on the subjective component of the deliberate indifference test.

The undisputed record shows that, prior to administering the TB skin test to Mr. Marchand, Medical Assistant Bonner conducted a "TB Risk Assessment and Screening," ECF No. 53-1 at 1-3, in which she verified that Mr. Marchand had no prior history of tuberculosis and had not come into contact with active tuberculosis. *Id.* at 1. During that screening, Medical Assistant Bonner also obtained information from Mr. Marchand indicating that he had a previous positive TB skin test and an "abnormal chest x-ray" at some point in the past. *Id.* at 1-2. Mr. Marchand claims in his verified Amended Complaint, and the court accepts his assertions as true for purposes of the Motion, that he told Medical Assistant Bonner that he had "prior allergic

---

[6] The court notes that Ms. Greengard's curriculum vitae and expert report are not attached to her affidavit, notwithstanding references to those documents in her affidavit. Greengard Affidavit ¶¶ 8, 25. Therefore, those documents are not part of the summary judgment record.

reactions to the injection," was "prone to staph infections," and therefore needed a chest x-ray in lieu of a tuberculin skin test. Am. Compl. at 4. Critically, however, Mr. Marchand has presented no evidence showing that he actually refused the test, and Medical Assistant Bonner did not document any refusal in the medical record. At that point, she proceeded to administer the test, informing Mr. Marchand that "it was policy and standard protocol." *Id.*

These undisputed facts—while perhaps not indicating that Medical Assistant Bonner responded with the highest degree of caution—nevertheless do not suffice to establish that she acted with the type of culpable, conscious disregard for Mr. Marchand's health that could satisfy the subjective component of a deliberate indifference claim. Rather, Medical Assistant Bonner conducted a routine tuberculosis assessment and screening, obtained information from Mr. Marchand, and concluded that the information she had allowed her to follow prison "policy" and to administer the TB skin test.

As Ms. Greengard opines from her many years of experience as a nurse practitioner, serious symptoms are not known to be common side effects of the TB skin test. Greengard Affidavit ¶¶ 20-23. This is true even for individuals who were allergic to tuberculin or had prior positive tests. *See, e.g.*, *Berry v. Swingle*, No. 2:12-cv-0363 KJN P, 2013 WL 1932717 (E.D. Cal. May 8, 2013) (where the plaintiff alleged that he experienced pain, itching, and swelling at the injection site of a TB skin test, the court held "there is no evidence that these symptoms are common side effects of this test," and the plaintiff therefore failed to meet the subjective prong). *Cf. Harris v. Correctional Medical Servs.*, 225 F. App'x 411, 412 (8th Cir. 2007) (nurse who administered TB skin test to prisoner, "even though she knew he would have a positive reaction," was not deliberately indifferent to a serious medical need); *Crymes v. N.J. State Dep't of Corr.*,

No. 09-3277 (NLH), 2010 WL 2326195, at *6 (D.N.J. June 7, 2010) (citing *Harris*, 225 F. App'x at 411) (nurse who administered TB skin test to prisoner who had previously tested positive was not deliberately indifferent to a serious medical need despite the Centers for Disease Control recommending that prisoners with prior positive tests be x-rayed instead).

And Mr. Marchand has not presented facts to demonstrate the existence of a material fact dispute that Medical Assistant Bonner knew at the time that a staph infection—the specific risk that Mr. Marchand mentioned because he was prone to them—was a likely side effect of the TB skin test. Whether administering a TB skin test to an allergic individual (or to someone who previously tested positive) is likely to result in a staph infection does not appear to be a simple matter that would be in a layperson's experience to predict.[7] At the very least, this court has found no cases that discuss such an assertion. And Mr. Marchand does not allege that he told Medical Assistant Bonner he'd previously had the injection site of a TB skin test become infected with staph bacteria or otherwise. The only facts before this court on that issue are Ms. Greengard's opinions that serious side effects, including infection, are not known to be common side effects of TB skin tests. Greengard Affidavit ¶¶ 20-23.

At most, the facts concerning Mr. Marchand's subsequent medical issues and course of follow-up care may demonstrate that Medical Assistant Bonner erred and misjudged the situation, but medical negligence does not constitute subjective deliberate indifference. *Estelle*, 249 U.S. at 106; *cf. Self*, 439 F.3d at 1234 ("a misdiagnosis, even if rising to the level of medical

---

[7] And to the extent Mr. Marchand's statement can be understood as telling Medical Assistant Bonner that he should not be injected *with anything* because he was prone to staph infections, that is not the claim he has brought here.

13

malpractice, is simply insufficient under [Tenth Circuit] case law to satisfy the subjective component of a deliberate indifference claim"). And possible negligence on Medical Assistant Bonner's part is the most that can be drawn from the undisputed facts here.

The undisputed record facts—construed with the maximum possible deference to Mr. Marchand, who did not even respond to the Motion—thus prevent Mr. Marchand from showing that Ms. Bonner, in her role as a medical assistant, disregarded an "excessive risk" to Mr. Marchand's health and affirmatively drew the inference from the information before her that he faced a substantial risk of serious harm from a tuberculin skin test. *Farmer*, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference") (emphasis added). He thus has failed to present "evidence on which the jury could reasonably find for" him on the subjective component of deliberate indifference. *N.M. Oncology & Hematology Consultants*, 994 F.3d at 1171-72.

Accordingly, the court finds that Mr. Marchand has failed to adduce sufficient evidence of a genuine issue of material fact that would preclude summary judgment on his Fourteenth Amendment claim against Medical Assistant Bonner.

## CONCLUSION

Consistent with the foregoing, Defendant's Motion for Summary Judgment Under F.R.C.P. 56(a), ECF No. 53, is **GRANTED**. Judgment shall enter for Defendant Hope Bonner, and the Clerk's office shall close this case.

The Clerk's office is requested to mail a copy of this order to Plaintiff's address of record (Lincoln Correctional Center) and a courtesy copy to him at the forwarding address provided by

the Correctional Center: 2929 West Sampler Lane, Monrovia, Indiana 46157.

DATED: March 24, 2025                              BY THE COURT:

_____
Susan Prose
United States Magistrate Judge